# Exhibit A

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
 2         BEFORE THE HONORABLE CAM FERENBACH, MAGISTRATE JUDGE
                            ---o0o---
 3

 4    UNITED STATES OF          : No. 2:21-mj-0915-VCF
      AMERICA,                  :
 5                              :
                  Plaintiff,    : October 28, 2021
 6                              :
           -vs-                 :
 7                              : United States District Court
      JIANXIANG SHI,            : 333 Las Vegas Blvd
 8                              : Las Vegas, Nevada
                  Defendant.    :
 9    _____:

10

11

                      TRANSCRIPT OF INITIAL APPEARANCE
12

13    A P P E A R A N C E S:

14    FOR THE GOVERNMENT:       DANIEL SCHIESS
                                WILL ROSENZWEIG
15                              Assist. United States Attorneys

16

17    FOR THE DEFENDANT:        MACE YAMPOLSKY
                                Attorney at Law

18

19    CERTIFIED INTERPRETER:    SAMUEL CHAN

20

21    PRETRIAL SERVICES:        JESSI MOOREHEAD

22    Proceedings recorded by digital recording produced by
      computer-aided transcript
23

24
      Transcribed by:          KATHRYN M. FRENCH, RPR, CCR
25                             NEVADA LICENSE NO. 392
                               CALIFORNIA LICENSE NO. 8536
```

```
 1    Las Vegas, Nevada, Thursday, October 28, 2021, 3:21 p.m.
 2                         ---OoO---
 3
 4             THE CLERK:  This is the time set for initial
 5    you appearance in case 2:21-mj-915-VCF, United States of
 6    America versus Jianxiang Shi.
 7             Counsel, please enter your appearance for
 8    the record, beginning with the government.
 9             MR. ROSENZWEIG:  Good afternoon, Your Honor.
10             Will Rosenzweig, with the Southern District
11    of Florida on behalf of the United States.
12             THE COURT:  Thank you, Mr. Rosenzweig.
13             MR. YAMPOLSKY:  Mace Yampolsky on behalf of
14    Sir Jianxiang Shi, who is present and in custody from
15    Pahrump.
16             THE COURT:  And do we have an interpreter
17    interpreting for the defendant?
18             THE INTERPRETER:  That's correct, Your
19    Honor.  Good afternoon.  My name is Samuel Chan,
20    C-h-a-n.
21             THE COURT:  Thank you.
22             THE INTERPRETER:  You're welcome.
23             THE COURT:  All right.  Who all is speaking
24    today?
25             All right.  Mr. Shi, can you hear me okay?
```

```
 1                  THE INTERPRETER:  I can hear you.
 2                  DEFENDANT SHI:  Yes.  Yes, Your Honor, I
 3     can.
 4                  THE COURT:  Okay.
 5                  The Cares Act, effective March 27th, 2020,
 6     authorized the use of video conferencing for certain
 7     court hearings, during the course of the COVID-19
 8     emergency.
 9                  On March 29th, 2020, the Judicial Conference
10     of the United States also found that emergency
11     conditions exist which materially affect the functioning
12     of the court.  Accordingly, Chief Judge Du, the chief
13     judge in our district, entered General Order 2020-5,
14     which has been reauthorized every 90 days, as required
15     by the statute and the Judicial Conference, authorizing
16     the use of video conferencing for this hearing.
17                  Mr. Shi, do you consent to making a video
18     appearance at this hearing?
19                  DEFENDANT SHI:  I, I agree.
20                  THE COURT:  Thank you.
21                  I find the defendant knowingly and
22     voluntarily waived his right to appear in person.
23                  Is your true name Jianxiang Shi?
24                  THE DEFENDANT:  Would you repeat that one
25     more time.
```

```
 1                THE COURT:  Is your true name -- if I'm
 2   pronouncing it correctly -- Jianxiang Shi?
 3                THE DEFENDANT:  Correct.  Correct.  Correct.
 4                THE COURT:  How old are you, Mr. Shi?
 5                DEFENDANT SHI:  I'm 57.
 6                THE COURT:  How far have you gone in school?
 7                DEFENDANT SHI:  Graduated from university.
 8                THE COURT:  Graduated from the university.
 9   Thank you.
10                All right.  You've been charged in an
11   Indictment filed in the Southern District of Florida,
12   of two Counts, fraud and misuse of Visas, permits, and
13   other documents, in violation of 18 USC 1546(a).
14                Have you had those -- that Indictment and
15   those charges read to you in your native language?
16                DEFENDANT SHI:  Yes, it was.
17                THE COURT:  All right.
18                You're not required to make any statement
19   about those charges either here in court or to any law
20   enforcement officer.  And anything you do say can you
21   used against you.
22                You have the right to trial by jury.
23                The right to subpoena witnesses to appear at
24   the trial.
25                And the right to assistance of counsel at
```

1    all stages of these proceedings.  If you cannot afford a

2    lawyer, the Court will appoint a lawyer for you at the

3    public's expense.

4              Do you understand these rights?

5              DEFENDANT SHI:  Yes, I do.  I understand

6    them.

7              THE COURT:  All right.

8              And you've hired Mr. Yampolsky to represent

9    you here today?

10             DEFENDANT SHI:  Correct.  Correct.  Correct.

11             THE COURT:  Thank you.

12             Now, because you're charged with a -- in an

13   Indictment in another district, the Southern District of

14   Florida, and you've been arrested here in the District

15   of Nevada, you have the right to an identity hearing in

16   this district, in which the government will be required

17   to show that you are, in fact, the person named in the

18   Indictment.  This identity hearing is not merely to

19   establish that your name is Jianxiang Shi, but, rather,

20   that you are the same person with that name who is

21   charged in the Indictment.

22             I understand from my courtroom deputy that

23   it's your intention to waive your identity hearing,

24   according to what your lawyer told Miss Renfro.

25             So, do you waive your identity hearing?

```
 1              DEFENDANT SHI:  Correct.  Correct.

 2              THE COURT:  All right.

 3              And Mr. Yampolsky, you'll file the

 4   appropriate document on that so we'll have it in the

 5   docket after this hearing.

 6              MR. YAMPOLSKY:  Yes.  As a matter of fact,

 7   Your Honor, I did e-mail it to Bonnie, and I signed

 8   electronically on behalf of my client.  He did give me

 9   authorization.

10              THE COURT:  Okay.  Well, then -- let's just

11   a make a plan here.  Do you want to scan that in or

12   would you rather he --

13              THE CLERK:  Can I print it out real quick?

14              THE COURT:  No, you don't need to print it

15   out.

16              THE CLERK:  I'll take care of it.

17              THE COURT:  Yeah.  Okay.

18              My deputy will make sure that gets on the

19   docket.

20              Okay.  So, Mr. Shi, did you have a chance to

21   speak to Mr. Yampolsky about what you're charged with in

22   the Indictment?

23              THE INTERPRETER:  Sorry.  Would you repeat

24   one more time.  I did not hear that, judge.

25              THE COURT:  I asked if Mr. Shi had a chance
```

1   to speak to Mr. Yampolsky, his lawyer, regarding what

2   he's charged with in the Indictment.

3               DEFENDANT SHI:  Yes.  I talk with him quite

4   well.

5               THE COURT:  Thank you.

6               And do you understand the nature of those

7   charges against you?

8               DEFENDANT SHI:  Some of them I understand.

9   Some of those I don't understand.

10              THE COURT:  All right.  But you had a chance

11   to talk to your lawyer about the charges?

12              DEFENDANT SHI:  Correct.

13              THE COURT:  All right.

14              Do you understand the purpose of today's

15   hearing?

16              DEFENDANT SHI:  What is in?

17              THE COURT:  Mr. Yampolsky, without -- I

18   just -- after talking to Mr. Yampolsky, do you

19   understand what is supposed to happen today at today's

20   hearing, what the issues are, what the Court is doing at

21   today's hearing, do you understand that?

22              DEFENDANT SHI:  Oh, yes.  Yes, I do.

23              THE COURT:  All right.  Thank you.

24              Mr. Yampolsky, do you have any reason to

25   question the competence of your client to understand the

1  charges against him and to assist in his defense?

2            MR. YAMPOLSKY:  Absolutely not, Your Honor.

3            THE COURT:  Thank you.

4            All right.  So, Mr. Rosenzweig, what's the

5  government's position on pretrial release?

6            MR. ROSENZWEIG:  Your Honor, the government

7  is seeking pretrial detention based on a risk of flight.

8            THE COURT:  Risk of flight.

9            And are you ready to proceeded to?

10           MR. ROSENZWEIG:  We are, Your Honor.  And if

11  I may, just preliminarily, the government would move --

12           THE COURT:  Hold on.  Hold on.  Let me ask

13  the defense counsel.

14           Mr. Yampolsky, are you ready to proceed on

15  the detention issue today?

16           MR. YAMPOLSKY:  Yes, Your Honor.

17           THE COURT:  Okay.  Fine.

18           Go ahead, Mr. Rosenzweig.

19           MR. ROSENZWEIG:  My apologies, Your Honor.

20           The government would move to unseal the

21  Indictment at this time.

22           THE COURT:  Oh.  The Indictment will be

23  unsealed.  And so I'll hear from the government first on

24  the issue of pretrial detention.

25           MR. ROSENZWEIG:  Thank you, Your Honor.

```
1                May the government proceed by proffer?

2                THE COURT:  Oh, yes.

3                MR. ROSENZWEIG:  Thank you.

4                In 2014, the defendant, Mr. Shi, obtained a

5      non-immigrant U.S. Visa under the name Jianxiang Shi.

6      On his Visa application, he answered no to the question

7      "other names used;" and he answered no to the question

8      "are you a permanent resident of country region other

9      than your country region of origin or nationality

10     indicated above,"  which he had listed as China.

11               In 2016, Mr. Shi obtained a non-immigrant

12     U.S. Visa under the name Jianxiang Shi, and on that

13     Visa application, he answered no to the question of

14     whether he had "other names used."  And he answered

15     yes, China, to the question, "are you a permanent

16     resident of a country region other than your country

17     region of origin or nationality indicated above," which

18     he had listed as Saint Kitts and Nevis.

19               He also answered no to the question "do

20     you hold a passport for the other country or region of

21     origin or nationality above," which refers to his answer

22     of China.

23               Those statements were false.  Mr. Shi

24     did have another name used, going by the name Lan Niu

25     in a passport and citizenship documents with the
```

1    Marshall Islands, as far back as 1996.  So, as a citizen

2    of China, Saint Kitts, and the Marshall Islands;

3    meaning, his statement that he was not a permanent

4    residence of a country other than the ones he listed on

5    those applications also false.

6            Finally, Mr. Shi did hold a Chinese

7    passport, making his statement to the contrary on the

8    2016 application also false.

9            On November 1st, Mr. Shi flew into Houston,

10   using his Chinese passport and his 2014 non-immigrant

11   U.S. Visa for entry into the United States.  After

12   traveling from Houston to Miami, Mr. Shi flew from Miami

13   to Saint Kitts using that same passport containing the

14   2014 Visa on November 2nd.

15           Then on --

16           THE COURT:  What year -- sorry.

17           Mr. Rosenzweig, what year are you talking

18   about there, November 1st, November 2nd?

19           MR. ROSENZWEIG:  2016, Your Honor.

20           THE COURT:  Okay.  Thank you.

21           Go ahead.

22           MR. ROSENZWEIG:  And on November 5th, 2016,

23   Mr. Shi returned from Saint Kitts, flying into Miami

24   International, and used his Saint Kitts and Nevis

25   passport, and a 2016 non-immigrant U.S. Visa to enter

1  the United States.  Law enforcement was able to verify

2  that Jianxiang Shi, and the individual purporting to be

3  Lan Niu, are in fact the same person.

4          When Mr. Shi entered the United States on

5  the trips just described, and others, Customs and

6  Border Patrol took pictures of him and obtained his

7  fingerprints.

8          On February 16th, 2017, the individual

9  purporting to be Lan Niu entered the United States at

10  Las Vegas, and his picture and prints were also taken.

11  A comparison of the pictures using facial recognition

12  technology, and a comparison of the two sets of

13  fingerprints both show a match between the two

14  individuals.

15          In addition to the facts supporting the

16  charged offense, related to the issues of risk of

17  fright, China has issued an Interpol Red Notice against

18  Mr. Shi in 2017 for, quote, crime of illegal fundraising

19  by fraudulent means, end quote.  Mr. Shi is also

20  currently under FBI investigation for securities fraud.

21          According to travel records pulled by the

22  Customs and Border Patrol, Mr. Shi has traveled

23  extensively between the United States and many different

24  countries.

25          Indeed, the defendant has considerable

1    wealth, means of travel and offshore accounts.  This has

2    been detailed extensively in the press, as well as being

3    observed by law enforcement and also contained in the

4    Pretrial Services' Report.

5           I would just briefly like to discuss

6    (unintelligible) 22nd, 2019 <u>Wall Street Journal</u> article,

7    which describes Mr. Shi as one of China's most wanted

8    men, who has been running a Hollywood movie company;

9    promoting a Crypto currency venture with boxer, Mike

10   Tyson; and, on one occasion, posed for a photograph

11   alongside President Trump.

12          Mr. Shi is a fugitive from Chinese

13   authorities who say he committed fraud and caused

14   billions of dollars to vanish.

15          And in addition -- that's the information

16   from the <u>Wall Street Journal</u> article.

17          Finally, Mr. Shi has, reportedly, been

18   living in California and Nevada, according to press

19   reports, and also law enforcement observations, under

20   the pseudonym Morgan Shi, since leaving China.  And

21   when the defendant was arrested, he was at a Las Vegas

22   Cryptocurrency -- he was, excuse me, at a Las Vegas

23   convention promoting a Cryptocurrency venture.

24          That concludes the government's proffer, and

25   we also have Special Agent Robert Nagelsky available.

1          THE COURT:  All right.  I don't think I need

2    to hear from him now.  Let me -- do you have anything

3    else you want to add?

4          MR. ROSENZWEIG:  Well, Your Honor, I do have

5    argument.  I'm not sure if you want me to get into that

6    now or wait until after Mr. Yampolsky.

7          THE COURT:  Yeah.  Yeah.  Go ahead and

8    complete your presentation on why you think I should

9    detain Mr. Shi as a risk of flight, and then I'll hear

10   from Mr. Yampolsky.

11         MR. ROSENZWEIG:  Okay.  Thank you very much,

12   Your Honor.

13         So --

14         THE COURT:  And I do -- I know you don't

15   appear here, but I do give you a brief rebuttal, you

16   know because you have the burden here.

17         So, go ahead.

18         MR. ROSENZWEIG:  Thank you very much, Your

19   Honor.

20         So the government is moving, as mentioned,

21   pretrial detention based on a risk of flight.  That is

22   based on a number of factors here that make Mr. Shi an

23   extremely high risk of flight.

24         First of all, the defendant has an

25   outstanding Interpol Red Notice issued by China.  So

14

1    it's important to note that although, obviously, this

2    is a felony and Mr. Shi is looking at prison time,

3    certainly, for this offense, it's not the only reason

4    why he would flee from prosecution.  He has a risk of

5    extradition to China, and is facing a significant

6    penalty there.

7              In addition, there is an ongoing securities

8    fraud investigation out of New York and Mr. Shi is aware

9    of that, and also will, potentially, depending on the

10   outcome of that investigation, face consequences out of

11   that investigation.

12             In addition, he's here illegally, for

13   exceeding the time period allowed when he entered the

14   United States as Lan Niu in February 2017.  And I should

15   note that, in fact, technically, Mr. Shi had not come

16   here -- you know, he is here, in fact, because he is

17   overstaying his period that he's entered based on his

18   Visa waiver through the passport he used when he entered

19   as Lan Niu.

20             The defendant has an extensive history of

21   international travel.  That's reflected both in CDP

22   records relating to his travel to the United States, but

23   also the defendant self-reported a significant amount of

24   international travel in the Pretrial Services' Report.

25             I would also say beyond that, most

1    importantly, this is a crime, and the characteristics of

2    the defendant, that relates specifically in the area of

3    flight.  The defendant has multiple identities.  He has

4    multiple passports.  He has multiple visas.  And it's

5    shown that he will change his identity based on what

6    suits him and how he can get into various countries.

7              Finally, I -- or sorry, two other points,

8    which is that he has significant means to, uh -- it's

9    been reported that he has access to private jets.  In

10   the Pretrial Services' report itself he details

11   significant assets that would allow him to evade

12   detection and to travel and escape this district or the

13   Southern District of Florida.

14             And then, finally, the defendant has no ties

15   to the Southern District of Florida, and so were he need

16   to appear before there, you know, the fact that he has

17   absolutely no ties, whatsoever, other than, you know,

18   the instant crime which relates to his travel involving

19   Miami, that would be a final reason to support detention

20   here.

21             THE COURT:  All right.  I understand the

22   government's position.

23             Mr. Yampolsky.

24             MR. YAMPOLSKY:  Your Honor, I have a couple

25   things to say, but first on the passports and, number

1   one, Morgan Shi, they call him Morgan because it's hard

2   to pronounce Jianxiang.  I have problems.  But my

3   understanding was that people call him Morgan for

4   convenience.  So that isn't another identity.  That's,

5   like, a nickname, shall we say; so, I don't think the

6   Court should hold that against him.

7               And on the multiple passports -- and I

8   was informed of this by Mr. Shi's wife, or baby mama,

9   Amy Lee, regarding the passports.  And it was related to

10  me that his original passport, which is under Mr. Shi,

11  you know, Jianxiang Shi, was because his father's

12  surname is Shi, and that's where it was.  But according

13  to Ms. Lee, after the father dies, then the region where

14  he comes from -- and, Your Honor, I'm not certain which

15  region in China -- but, apparently, that one changes

16  their name to the sur name of the mom.  The mom's sur

17  name is Niu, that N-i-u, and it's my understanding that

18  Lan, the reason why he's called Lan is because he born

19  the year of the dragon, and that's supposed to be why

20  he's called Lan.  So, anyway, that's what I need to say

21  on the passports.

22              On the other stuff, he's not -- I don't

23  think he's a danger.  I know Pretrial reported --

24              THE COURT:  Hold on, Mr. Yampolsky.  Hold

25  on.

1            I see that your client is holding the phone

2   in a strange way and he's trying to say that maybe he's

3   not hearing what's happening here.

4            Can the interpreter hear me?

5            THE INTERPRETER:  Yes, Your Honor.  I can

6   hear you.

7            THE COURT:  Okay.

8            THE INTERPRETER:  (Unintelligible.)

9            (Zoom interruption.)

10           THE COURT:  All right.  Were you

11  translating -- wait a minute.

12           Were you translating for the defendant?

13           THE INTERPRETER:  Yes, I was, Your Honor.

14           THE COURT:  Well --

15           THE INTERPRETER:  And I saw him stood up and

16  then we had both lost the connection.

17           THE COURT:  Well, here, can you talk to him

18  and find out if he, at some point, was no longer able to

19  hear you or something happened.  What happened there?

20           THE INTERPRETER:  Well, I believe

21  the connection was disconnected.  Right now

22  (unintelligible) --

23           THE COURT:  Okay.  Well, call the number

24  back and see if he'll pick up the phone.

25           THE INTERPRETER:  Okay, Your Honor, I'll do

1  that.

2              (Discussion in foreign language.)

3              THE INTERPRETER:  Your Honor, I believe

4  Mr. Shi is reconnected.

5              THE COURT:  He's reconnected.  Yes.  Ask him

6  to mute the speaker on the desk, please.

7              THE INTERPRETER:  Okay.  Very good, Your

8  Honor.

9              THE COURT:  Okay.  Now, can you ask him was

10  he able to hear what Mr. Yampolsky said.

11              Wait.  He just hung the phone up again.

12              Was he able --

13              UNIDENTIFIED SPEAKER:  He needs to put

14  himself on mute.  Not on the phone, but on -- yeah, on

15  us, so we can't hear him.  Not on the phone though.

16              THE INTERPRETER:  (Unintelligible.)

17              THE COURT:  Mr. Chan, are you talking to the

18  custodial officer?

19              THE INTERPRETER:  Yes.

20              THE COURT:  Okay.

21              Now he's handing the phone back to the

22  defendant, can you please ask the defendant if he heard

23  any of what Mr. Yampolsky had to say.

24              THE INTERPRETER:  Very good, Your Honor.

25  I'll ask him.

1          MR. SHI:  Yes, before we disconnect those

2     connections, I was able to hear the attorney.

3          THE COURT:  Okay.

4          So I think the disconnection happened

5     just when you switched from the statements about the

6     different names on the passport and you were going on to

7     the next subject, Mr. Yampolsky.

8          Can you pick up there, please.

9          MR. YAMPOLSKY:  Okay.  I can.  And regarding

10    lack of ties to the community, I have to disagree with

11    the government.  He's been with Amy Lee for ten years.

12    They were together in California.  They moved here

13    together.  He has two children -- and I'm not going to

14    try to pronounce their names, but one is 8, one is six.

15    They live together.  They live here at 800 Majestic

16    Drive in Henderson.  And those are the ties to this

17    community.  He had good ties to Southern California --

18    or to California previously, but he has -- he has moved

19    from there to here.

20          And just, finally, Your Honor, this isn't a

21    presumption case, like a drug case, where it's presumed

22    there's not going to be any conditions.  It's hopeful

23    that there are some conditions, and I -- even in spite

24    of the Pretrial Services' report, even in spite of what

25    Mr. Rosenzweig said, the Court could fashion some

1   conditions for his release; i.e., have him -- have him

2   surrender all his passports, put electronic monitoring

3   on him, have him check in with intensive supervision,

4   call once a day.  I think if we did that we'd be assured

5   of his presence at any future proceedings.

6              On that, I'll submit it.

7              THE COURT:  All right.  Thank you,

8   Mr. Yampolsky.

9              Anything more, Mr. Rosenzweig?

10             MR. ROSENZWEIG:  Just very briefly, Your

11  Honor.

12             The arguments about his other names,

13  whatever the rationale for why he went by those other

14  names, the point still stands he's using different

15  identities at different times, lying about using those

16  other identities to further his travel.

17             The final thing I'll just say, Your Honor,

18  is I think Mr. Shi sums it up well in his own words in

19  the Pretrial Services' Report.  When asked where does

20  he currently maintain his citizenship, the defendant

21  stated, quote, "I do not know how to answer that."

22             The bottom line here is that this is person

23  who is wanted not just in this case, but in several

24  other cases, including by China, has a powerful,

25  powerful incentive to flee, and has the means to do

1  so, and has shown that he will use multiple identities

2  to do so.  And for that reason, I think there are no

3  combination -- there are no conditions or combination

4  of conditions that can adequately assure his appearance

5  in the Southern District of Florida.

6          Thank you.

7          THE COURT:  Okay.

8          So the factors I consider when making this

9  decision are the nature and circumstances of the

10  offense; the weight of the evidence; the history and

11  characteristics of the defendant; as shown in the

12  Pretrial Services' report, at the time of the offense,

13  was the defendant subject to conditions of release; and,

14  of course, nature and seriousness of danger to any

15  person or the community.

16          The defendant was not subject to conditions

17  of release at the time of the offense.  The government's

18  not moving for danger.  So, really, I focus on the first

19  three categories of the offense, and it was two Counts

20  of fraud and misuse of visas, permits or other

21  documents.  The evidence, you know, appears strong,

22  but that's the least important factor and, you know,

23  the defense has some arguments there.  And, of course,

24  the defendant is presumed innocent at this stage of the

25  proceeding.

1            Looking to the Pretrial Services' Report,

2   and those factors in there, I have to say that this

3   report was very unusual in both its content and the

4   scope of conflicting information.  I want to commend

5   Pretrial Services for doing an extensive and quite

6   clear -- well, an extensive report that was readable,

7   although it was confusing, given the information given

8   to Pretrial Services.  And, I appreciate them doing that

9   so quickly.

10            Employment is not clear at all to me,

11   although it certainly is clear, I think undisputed, that

12   the defendant is extremely wealthy.  He has offshore

13   accounts.  That's not rebutted.  He is involved in

14   international travel to an exten -- and it's reported

15   and unrebutted that he uses chartered aircraft to do

16   that.

17            And, given the nature of the charges, I

18   think the government has a very strong argument, a

19   strong case here that the defendant has an incentive to

20   flee, and the means to flee.

21            So, under 3119 USC 3142(f)(2)(a), I find

22   there's a serious risk that Mr. Shi is a serious risk

23   that he will flee.  Accordingly, defendant -- I find

24   that no condition or combination of conditions will

25   reasonably assure the appearance of the defendant as

1   required.  He is ordered detained and transported to the

2   Southern District of Florida for further proceedings.

3   He's detained pending trial.  He will be committed

4   to the custody of the U.S. Marshal for confinement

5   in a corrections facility separate, to the extent

6   practicable, from persons a waiting or serving

7   sentences, with a reasonable opportunity for private

8   consultation with counsel.

9           Also, under criminal Rule 5(f), the

10  government is ordered to comply with its disclosure

11  requirements under Brady versus Maryland, and related

12  cases.  Failure to do so may result in sanctions.  A

13  written order will follow.

14          As the defendant is a noncitizen, the

15  government shall notify the consulate office of the

16  defendant's country of nationality that the defendant

17  has been arrested, if the defendant so requests, and

18  shall make any other consulate notifications required

19  by treaty or other international agreement.

20          Now, Mr. Shi, in these circumstances I set a

21  status check in this case so that my courtroom deputy

22  can check with the marshals and see if you have left

23  this district to be taken to the Southern District of

24  Florida.  I don't actually hold a hearing at this time.

25  It's just on the docket.  So, we keep track of you until

```
 1   you've left the district.

 2            So the status check is November -- why don't

 3   you read the status check, please.

 4            THE CLERK:  November 11th, 2021, at

 5   4:00 p.m.

 6            THE COURT:  And that will be in this

 7   courtroom, but there's not really going to be a status

 8   check.  We'll either -- if you haven't left, we'll enter

 9   a Minute Order saying that we've checked with the

10   marshals.  We have an expected date for you to leave.

11   If you've left, we'll note that in the docket.

12            Okay.  Anything else to come before the

13   Court?

14            MR. YAMPOLSKY:  Well, Your Honor, isn't

15   November 11th a federal holiday?

16            THE COURT:  Ah, you're right, Mr. Yampolsky.

17   Thank you for catching that.  That's Veteran's Day.  How

18   could I forget?

19            MR. YAMPOLSKY:  Yes.

20            THE CLERK:  So, I'm sorry.  We'll make it

21   November 12th, 2021, at 4:00 p.m. in 3D.

22            THE COURT:  All right.

23            Anything else to come before the Court.

24            MR. YAMPOLSKY:  Thank you.

25            THE COURT:  Thank you Mr. Yampolsky.
```

1          Anything else to come before the Court.

2               MR. YAMPOLSKY:  No, Your Honor.

3               MR. ROSENZWEIG:  Not from the government.

4     Thank you, Your Honor.

5               THE COURT:  All right.  Thank you, Your

6     Honor.

7               DEFENDANT SHI:  Thank you, Your Honor.

8

9          (Court Adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          -oOo-

2

3          I certify that the foregoing is a correct
           transcript from the record of proceedings
4          in the above-entitled matter.

5           Kathryn M. French                November 11, 2021

6          ─────────────────────────         ─────────────────

7          KATHRYN M. FRENCH, RPR, CCR                 DATE
           Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25