**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE No. 1:21-CR-20421-DPG(s)**

UNITED STATES OF AMERICA

v.

JIANXIANG SHI
    a/k/a "Long Niu,"

    Defendant

**DEFENDANT SHI'S REPLY TO UNITED STATES'**
**RESPONSE IN OPPOSITION TO DEFENDANT SHI'S**
**MOTION TO REVOKE PRE-TRIAL DETENTION ORDER**

Defendant Jianxiang Shi (hereinafter "Shi") by and through undersigned counsel, files the following Reply to "United States of Americas' Response in Opposition to Defendant Jianxiang Shi's Motion to Revoke Pre-Trial Detention Order" [Doc. No. 20] filed on December 8, 2021:

**I.  THE ALLEGED CRIMINAL CONDUCT TOOK PLACE DURING A BRIEF FIVE-DAY PERIOD OVER FIVE YEARS AGO**

On Page 1 of its Response, the Government points out that "[t]he Superseding Indictment alleges that Shi knowingly possessed a fraudulently obtained visa from November 1 through November 2, 2016 and that he knowingly possessed and used a fraudulently obtained visa on November 5, 2016 (Id.)." It is respectfully asserted that the fact that the alleged criminal conduct took place three times during a five-day time period over five years ago is evidence in support of release.

1

## II. THE GOVERNMENT'S CHINESE INTERPOL RED NOTICE ARGUMENT IS A "RED HERRING" AND SHOULD NOT BE CONSIDERED

On Page 2 of its Response, the Government argues that "Shi faces significant collateral consequences for his conduct outside of imprisonment on these charges. Shi is present in the country illegally and there is a pending INTERPOL Red Notice from China against him, meaning that he faces deportation and/or extradition to China (Id. at 11:15–19; 13:24–14:6; 14:12–19)". Given the fact that the United States does not have an extradition treaty with China[1] and, in August of 2020, the United States halted its extradition treaty with Hong Kong because Beijing's security law had "crushed the freedoms of the people of Hong Kong"[2], it is unclear what is the legal or factual basis for the Government's argument that Shi faces the possibility of extradition from the United States to China. Contrary to the Government's assertions, common sense tells us Mr. Shi would much prefer to stay in the United States than face the possibility of being sent to China.

---

[1] Reuters article by Brendan Pierson and Jonathan Stempel dated December 6, 2018 entitled "Explainer: How does extradition to the U.S. work?" states "China, Russia and Saudi Arabia are among the nations with no U.S. extradition treaties."

[2] BBC article dated August 20, 2020 entitled "Hong Kong: US suspends extradition treaty over national security law". Foreign Policy article by Robbie Gramer dated July 13, 2020 entitled "U.S. Preparing to Suspend Extradition Treaty With Hong Kong" which states, in pertinent part, that "[t]he CCP [Chinese Communist Party] has destroyed the legal firewall between its legal system and that of Hong Kong," Rep. Michael McCaul, the top Republican on the House Foreign Affairs Committee, told Foreign Policy. "It is no longer safe to extradite Americans there, where they would be subject to sham prosecutions and trials inside China for anything the CCP finds objectionable under the new Orwellian national security law."

**III.   THE GOVERNMENT'S RELIANCE ON A FEDERAL CRIMINAL INVESTIGATION IN ANOTHER DISTRICT IS NOT A LEGITIMATE REASON TO DETAIN HIM IN THE SOUTHERN DISTRICT OF FLORIDA**

On Page 2 of its Response, the Government argued that "Shi is facing not only criminal penalties in this case, but significant potential penalties in other federal criminal investigations against him. The Government proffered facts that Shi was under investigation for securities fraud and that he had knowledge of that investigation (Id. at 11: 19–20; 14:7–11)". First, an investigation in another district is merely an investigation and no indictment has been brought. Second, the Government's argument that Shi has knowledge of the investigation should actually be considered as evidence against flight because even though Shi had knowledge of this investigation in another federal district, he did not flee the United States. To the contrary, Mr. Shi is fighting to remain in the United States.

**IV.   THE FACT THAT THERE ARE CHARGES PENDING IN CHINA IS ACTUALLY A POWERFUL DISINCENTIVE TO FLEE THE UNITED STATES**

On Page 3 of its Response, the Government argues that Shi "is wanted not just in this case, but in several other cases, including by China, has a powerful, powerful incentive to flee, and has the means to do so, and has shown that he will use multiple identities to do so". It is respectfully asserted that common sense tells us that the fact that there are charges pending in China, is in reality a powerful disincentive to flee the United States. To put it bluntly, if Shi were to step foot out of the United States, he runs the considerable risk of being detained on China's Interpol Red Notice. Mr. Shi holds no hope that he would receive due process in China.

V. **SHI'S TRANSPORT AND MEDICAL STATUS**

On Page 4 of its Response, the Government noted that "Shi is currently pending transport to the Southern District of Florida." Based upon the information currently available to the undersigned, Shi is currently being held at the Grady County Law Enforcement Center in Chickasha, Oklahoma and that Shi has tested positive for COVID-19 and is currently in isolation. Based upon the foregoing, it is respectfully submitted that release is appropriate for health/compassion reasons. Mr. Shi's physical condition places him at risk of severe illness from COVID-19. Mr. Shi has reported that the cells at Grady County Detention Center in Oklahoma where he is being held are overcrowded and in his opinion unsafe.

VI. **THE GOVERNMENT CONCEDES THAT CHINA IS "WITHOUT DEMOCRATIC FREEDOMS OR DUE PROCESS, AS WELL"**

On Page 5 of their Response, the Government stated "[a]nd the fact of his other status as an international fugitive means he could face extradition to a country without democratic freedoms or due process, as well."

On Page 8 and 9 of their Response, the Government points out that "Shi argues that these articles establish that China's legal system lacks due process or fairness protections, and so Shi would not want to flee and be extradited to China. The Government does not dispute these assertions. . ."

Again, as stated earlier, the United States does not have an extradition treaty with China, therefore, we would request that the Government explain how Shi could be extradited to China.

In addition, the Government's concession that China is a country "without democratic freedoms or due process" is compelling evidence that Shi has absolutely every intention of staying in the United States and has no desire to flee the United States.

### VII. THE GOVERNMENT FAILS TO APPRECIATE THE RISKS OF LEAVING THE UNITED STATES WITH AN OUTSTANDING INTERPOL RED NOTICE

On Pages 5 and 6 of its Response, the United States argues "[b]ut the risk here is flight from the jurisdiction, whether within or outside the United States. Shi has a powerful incentive to do so in both ways—to abscond within the United States to avoid deportation outside of it and to flee the country entirely to a safe haven to avoid prison time and possible removal to Chinese authorities." Such an argument fails because of the very real risk that Shi faces if he were to step foot out of the United States and be detained and/or extradited pursuant to China's Interpol Red Notice.

### VIII. THE APPLICABLE GUIDELINES FOR THIS OFFENSE IS SET FORTH IN U.S.S.G. § 2L2.2

On Page 7 of its Response, the Government argues that "[i]n support of his 0-6 guidelines calculation, Shi cites U.S.S.G. § 2L2.2 and waves away the possibility of enhancements applying. However, § 2L2.1 may also apply to these circumstances, with a base level offense of 11. Furthermore, Shi is eligible for the passport enhancement under § 2L2.2(b)(3) or § 2L2.1(b)(5), and other enhancements may apply as well, such as those for obtaining the fraudulent documents to facilitate another felony offense. Under these circumstances, Shi could face a guideline sentence of 1-3 years imprisonment, and the maximum penalty for visa fraud is up to 10 years' imprisonment." If the Government

believes that U.S.S.G § 2L2.2 is not applicable and that certain enhancements may be applicable, the undersigned would encourage the Government to present the evidence and argument that is available to them in support of this position.

### IX.   SHI IS WILLING TO SURRENDER ANY PASSPORTS

On Page 8 of their Response, the Government argues that Shi's "argument ignores Shi's several other national passports and citizenships, and the resources he could use to go anywhere else in the world." In Reply, the undersigned would be willing to surrender any and all passports as part of any conditions of release.

### X.   EDNY'S "ONGOING SECURITIES FRAUD INVESTIGATION"

On Page 9 of its Response, the Government states that ". . . Shi engages in unfounded speculation by suggesting that the Government's reference to an ongoing securities fraud investigation against him means the Government has a bad faith basis for pursuing this prosecution. Shi offers absolutely no evidence to support this claim. The Government has charged Mr. Shi with visa fraud because he committed that offense and because the Government can prove that he did so beyond a reasonable doubt."

It appears that the Government is making reference to Section D on Pages 10 and 11 of Shi's Motion entitled "FBI Investigation for Securities Fraud in the Eastern District of New York – Is the SDFL Case Merely a Placeholder?" In that section, Shi pointed out that, given the relatively low guideline range for visa fraud and that it appears that there are not a substantial number of prosecutions in SDFL, for visa fraud involving a single

defendant, it could be argued that "the SDFL prosecution may be motivated by a desire to hold Shi until charges may be brought in the EDNY."

If the Government's motivation for this SDFL prosecution has nothing to do with the ongoing securities fraud investigation in EDNY, why not inform the Court in their Response that the prosecution in SDFL has nothing to do with and was not motivated in anyway by what is happening in EDNY?

## XI.  CONCLUSION

WHEREFORE, Defendant Shi respectfully requests: (1) a de novo hearing; and (2) his immediate release from custody imposing a condition or conditions of release to assure his presence at trial including but not limited to: (a) surrender any passports; (b) electronic monitoring and home confinement at his residence in Nevada; and (c) report to Pretrial Services in Nevada on a regular basis.

Respectfully submitted,

| | |
|---|---|
| By: *David M. Garvin* | By: *Jeffrey B. Setness* |
| David M. Garvin | Jeffrey B. Setness |
| Florida Bar No. 347736 | Nevada Bar No. 2820 |
| dgarvin@garvin.law | California Bar No. 96773 |
| David M. Garvin, P.A. | jsetness@fabianvancott.com |
| 2333 Ponce De Leon Blvd., Suite 314 | *Pro Hac Vice Attorney* |
| Coral Gables, Florida 33134 | Fabian VanCott |
| Telephone No. (305) 371-8101 | 411 East Bonneville Avenue, Suite 400 |
| Attorney for Jianxiang Shi | Las Vegas, Nevada 89101 |
| | Telephone No. (702) 286-2626 |
| | Attorney for Jianxiang Shi |

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on December 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The Clerk will serve the foregoing document this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                By: */s/ David M. Garvin*
                    David M. Garvin